Good afternoon. May it please the Court, Joshua Buck, on behalf of Plaintiffs' Appellants Jesse Busk and Lori Castro. I'd like to reserve two minutes of rebuttal, please. Thank you. This case involved the question of whether undergoing mandatory security clearances at the end of a day to protect and preserve inventory is compensable under the FLSA and state law. The District Court dismissed plaintiff's complaint in its entirety under both the FLSA and state law, and I'd like to raise three points here today. First, with regard to its dismissal of the FLSA claims, the District Court held that the undergoing of mandatory security clearance at the end of the day that is designed to protect the inventory of the warehouse was not a principal activity and not integral and indispensable to the employee's jobs. We submit that that was incorrect under this Court's prior precedent in IVP v. Alvarez. The question of whether or not an activity is integral and indispensable relies on two prongs. One, whether the activity is necessary to other principal activities, and two, whether it's done for the benefit of the employer. I think prong one is easily satisfied, and I think the majority of the other cases that have addressed security clearances around the country have reached that the necessary prong is somewhat easily met. Here, there is no question that employees have to go through the security clearance at the end of the day in order to leave work. Kennedy, does it take each employee a different amount of time to go through? It may very well, Your Honor. So if you're at the back of the line, you make more money that day than the person at the front of the line? It certainly. Would you be at the same place every day? I highly doubt that. So that each day, you'd have a different person at a different place, and that same person would be at a different place the next day, and in some way, in your view, somebody has to do the bookkeeping and compensate. Isn't that your view? I think it is, Your Honor. I think at some point that the clock needs to represent and start ticking or stop ticking, essentially, and stop ticking at the end of the security. It does. It does when you put the card in. It does. So it's all right. The clock's all right. It's just the time in which you put your ticket in, and it's going to vary for everybody who works at that company every day, isn't it? I think it necessarily will. Passing through security, waiting and going through necessarily will vary. I don't suppose that an employee will always get to the front of the line or always be in the back of the line. In fact, if we did what you are asking us to do, you would want to hang back and make sure you're the last person in the line every day, and the numbers would vary even more. Isn't that a common-sense approach to the problem? I'm not sure if that's the case. If time clocks were placed at the end and after an employee went through a security checkpoint, I think that that would necessarily be the end of the day, and I think that they would go home as quickly as possible as they do ordinarily at the end of their workday. Would there be a rush to the front of the line? Quite possibly, Your Honor. And I think that the critical question – I'm sorry, Your Honor. Do you have a question? Let me ask you another question about that. Necessary for the principal work. The principal work of these employees is not to go through a security, is it? No, Your Honor. The principal work of these employees is to process, secure, and maintain inventory at the Amazon.com warehouse. So how is this necessary for the principal work performed? This is necessary, in our opinion, and it's done for the benefit of the employer. Well, that's the second prong, done for the benefit of the employer. I'm talking the first prong. How is it necessary to the principal work performed? It's necessary because the principal work performed essentially is inventory control by these employees. They are responsible for making sure that the accounting of the process – Well, it's necessary for them to go through clearance when they leave because they do this other kind of work during the day? Yes, Your Honor. It's designed to make sure that the Amazon.com inventory is accurate. Well, that's done for the benefit of the employer. I'm just trying to have you concentrate. It doesn't seem to me that going through this security clearance has anything to do with their principal work employed to do. It's an additional thing they have to do, but it doesn't have anything to do with principal work performed. Well, I respectfully disagree with regard to – Well, I guess I'm trying to figure out how it does. Again, I think the distinction that the plaintiffs make here, whereas the difference of the other security clearance cases, was that this security clearance is not designed as a general safety precaution for the show. Well, all you're doing is trying to change my analysis to whether it was for the principal benefit of the employer. That was safety. That might be said to be for everyone. Or then you got the other case, and that was because the federal government mandated it, so it had nothing to do. But I don't want to move to two. The second factor, I want you to tell me why it's necessary the principal work, and I'm concentrating on what that employee does. Again, the employee, by being in the warehouse, is charged with maintaining the inventory of the employer. This has nothing to do with maintaining inventory. And by going through the security clearance, the plaintiffs allege that that in and of itself is designed to make sure that the employee is safeguarding the inventory. I mean, they're not stealing. I mean, they're not stealing. I mean, that's what we're talking about here. I mean, they're not stealing. They don't want the employees to walk off with the inventory. Yes. So it's not an accounting clearance. Well, I think, Your Honor, if suppose the employer, rather than put a security clearance at the end of the workplace, put a computer terminal at the end of the workplace, and said, before you leave today, we want you to go to the computer, and we want you to affirm or attest that everything you touched today is still there, and there hasn't been any damage to the inventory, and you haven't stolen anything. Or inadvertently put it in your pocket. Or inadvertently put it in your pocket. Or have one of your coworkers put it in your pocket. Let me go on to the benefit of the employer. This employment responsibility, there's nothing in the record that I could come up with. Is this an at-will employee? Yes, Your Honor. If this is an at-will employee, isn't it for the benefit of the employee to go through something such that he wouldn't be fired just like that, simply because the employer thinks he's taking stuff when he really hasn't? So he can walk through this security clearance, and there's absolute proof he hasn't taken a thing. Why is it always the benefit of the employer when we have an employment relationship? With at-will employment, it seems to me to be the benefit of both, somewhat similar to the benefit of both in other donning and duffing cases.  Your Honor, I suppose that one could understand it as being part of the benefit to the employee in that sense. Although I think the overriding benefit that is conferred here, and the reason why it is set up by the employer, is for the employer to make sure that the inventory in its warehouse is correct. And I think that that is the reason why they set it up this way. And I think that's also the reason why they set it up. Is that in the record? I mean, all we got is what you allege. That's correct, Your Honor. All we have is the complaint. And the complaint alleges the – I'm giving you an answer. We're here on that allegation, right? And you've alleged it's for this, and therefore my thing is not worthwhile. Is that what you're really saying? That's correct, Your Honor. So I think the other critical fact with regard to the compensability of the security clearance, as I initially hinted at, is the fact that it's only on the way out and not on the way going into the warehouse, which makes it distinguishable from all the other security clearance cases. And as Your Honor hinted on – Let me ask you another question. It seems to me, reading your complaint, that you allege that all employees have to do this, and there's nothing in the complaint that says anybody else has to do it. Isn't that important? What if everybody else that has to walk out of this plant has to go through the same security clearance? If everybody else has to go through the same clearance, then it would be under different donning and duffing cases. Where everybody has to do it, it's okay. I think you're right, Your Honor. I think that that is what the Bonilla case, the 11th Circuit, said everyone, visitors and employees, everyone had to go through security clearance. Well, so why didn't you allege that in your complaint? Why am I left to try to deal with this complaint as it is alleged? I mean, just because your people have to do it, why have you alleged enough to really get to the case you want to get on a motion to dismiss? Well, I think that we have alleged that the employees had to do it. We cannot allege the unaffirmative. It seems to me that might be your downfall, wouldn't it? I still think that it is, Your Honor. I think that on the face of the pleading and looking at this in a motion to dismiss standard that the district court erred by rejecting the facts that we have alleged in the complaint as not stating a valid cause of action on the FLC. I briefly would like to move on to the other reason why the district court dismissed plaintiff's class claims under State law. And it did so in two alternative reasons. The first and overarching reason why it dismissed the class claims was because of its inherent incompatibility with Rule 23 class claims and FSA collective action claims. Every appellate court that has addressed this issue has rejected that argument. And the most recent case involved was Knepper v. Rite Aid. And in Knepper, it cited various circuits that have rejected the inherent incompatibility argument. It actually cited this circuit as well as rejecting that argument in Wang. Wang has since been reversed and vacated. And in Wang, though, there was the court did implicitly support that a hybrid or combined FLSA collective action and a Rule 23 State law class action for unpaid wages can be brought in the same case. Go on, Warren. The big point about this, it seems, and I read a lot about what you're arguing, but the big point really is if the State, if the Federal claims don't have any gas, neither do the State claims, do they? I disagree, Your Honor, and here's why. The State law claims do not. It seems to me the State law is less helpful to you than the Federal law when you review the State law. Therefore, if you can't go on the Federal claims, what's the big deal about the State claims being dismissed as well? There's no part of the Portal Act under Nevada State law. I understand, but there's not very good law under the Nevada law either on your behalf. The actual law in Nevada, the way we see it, is that there's a custody of control standard whether or not something is considered compensable time. And under custody control standard, it's more akin to a California-like standard. And in that standard, we contend that by merely having to maintain and be in the facility and not be released from work until after undergoing the security clearance, that that time is necessarily compensable under Nevada law. And again, what the District Court did and what we believe to be an error is the District Court combined the FOSA analysis in dismissing the State law claims. And they are separate and distinct. Again, the Nevada State law statutes do not contain a part of the Portal Act or any kind of limiting language on what can be considered compensable time. And with that, I see that I'm well over my time. You're out of time, but we'll give you a little bit of time for rebuttal. And we'll equalize the time, so don't worry. I want you to put 12 minutes up for that. Thank you, Your Honors. You don't have to use that. If you may, please, the Court. My name is Rick Ross Kelly. I'm here on behalf of the Appellee Integrity Staffing Solutions, Inc. Integrity maintains the staff for several warehouses that are owned and operated by Amazon.com. The particular warehouses we're speaking about today are in Fernley, Nevada, and Las Vegas, Nevada. Now, as Judge Smith has already pointed out, we're not dealing with a case where we've done extensive discovery and we have a lot of facts. We're dealing with this on a pleading standard at this point. And because we're dealing on a pleading standard, what's my standard of review? Your standard of review is going to be a de novo review, I believe. Well, but what have I got to look at when I look at that? At this point. It's on the pleadings. I mean, you brought your motion. Don't I have to give every intendment of doubt to the pleadings that are there? You do. There's nothing else for me to look at. That is correct, Your Honors. I've got to say it's the fact. You have to basically base it upon the facts of the complaint. We believe the court rightly decided that even based upon the facts of the complaint, there is no cognizable claim for extra time or for basically converting that security clearance, going through the security clearance, into a work time. Because that's really what the issue is. The issue is whether or not going through security clearance, whether it's the beginning of the shift or the end of the shift, it really makes no difference. There's no question from the allegation to the complaint. The only reason for this security clearance is the benefit of the employer, correct? From the complaint, that is the allegation, correct? And that's what I have to deal with, correct? That is correct, Your Honor. Oh, it's a given. It's the benefit of the employer. It's on the employer's ground as well, is it not? That's a conclusory allegation that's under Alvarez. Well, I don't think you have to do it when you're out on somebody else's ground. It's on your ground. They have to go through, right? They have to go through the ground. Actually, the facility is owned by a third party, Amazon.com, correct? So it is true that the employees in Integri, who are the warehouse employees in this particular case, whose job is to go into the warehouse and fill orders that are going to be later shipped out to the various customers around the country, we believe that under the Alvarez and Iqbal, or the Iqbal and Tuomly standard, excuse me. Yeah. On the Alvarez standard, you lose. Under Alvarez? I don't think so. No, it's not a pleading case. Alvarez was. Oh, yes. It's very true. Under Alvarez, on the subject of the law, I think we win, but you're correct. It's not a pleading case. Under the pleading standard, Iqbal and Tuomly, I apologize for misspeaking, it's a conclusory allegation. Let's turn to Alvarez, if you don't mind. Why isn't this a plausible case under Alvarez? I mean, I don't see much difference between putting on safety gear and going through security clearance if they're required by the employer. So tell me why you think it's different. Okay. Well, because, as we know, the safety, the standard is actually, the general typical safety gear is not, under the Donning and Doffing standards, not compensable. It's actually the additional items that they had, the knives and different things that they had to use that converted this into a work activity, in essence, what the court held. But the court also held that because, if you recall, the companion case, which dealt with, I think it was the Baker case. Right out of the Third Circuit. Right. Employees coming from the entrance and going through to the locker room where they were going to receive their tools and having to wait in line to actually get their tools, and they're geared to Don. The court said that clearly falls within a preliminary activity and is not compensable. Waiting in line, even to get your safety equipment, in that case, or your knives or whatever it was they were receiving, is not compensable activity because it falls within the definition of the Portal to Portal Act. They said this is classic preliminary activity. So the only time the work time actually began was, they said, in the locker room when you're Donning, that becomes your first activity that's germane to this job. And then going from there to the floor where you're doing your work, that's travel time within the facility to do work. So you're traveling from work site to work site. So they gave them, or the Supreme Court said that that was compensable. Right. But this is an entirely different circumstance from preliminary activity. It's actually post-work activity. It is. But I think it's a distinction without a difference, really. The issue is really where did they finish their activities for which they were engaged? Will they finish their activities in the warehouse? So walking, whether it's walking to the parking lot. Well, certainly walking to the parking lot would not be compensable, but delays for the employer at a security checkpoint arguably might be. The reason I ask this, I mean, you may have a ‑‑ if you fully vetted this with discovery, you might have a point. I have difficulty on a pleadings case where we have to construe everything in the favor of the plaintiff based on the pleadings that they don't have a theory. I appreciate that. Our point is even under the Iqbal Twomley standard because a general pleading simply stating it's a matter of laws for the benefit of the employer does not convert it into a true fact, which helps them survive. They need to plead specific facts that will lead to that conclusion or at least could possibly lead to the conclusion as a Iqbal Twomley standard. We don't have that here. So it's our position that based upon the case as it was pled and every case that has looked at it, every court that has looked at the issue of security has determined that it was a preliminary activity and not compensable, we see no reason or no distinction between this particular case and those cases. You know that this ‑‑ of course, you're familiar with the plaintiff's argument in this case, and they say the distinction is that in all the other security clearance cases, everybody had to go through security, and here just the workers had to. So how do you answer that? Unfortunately, we're stuck with the pleading. And then I think as was pointed out, the pleading ‑‑ Well, that was your fault. You moved to dismiss on the pleadings. We can't do anything about that. Yeah, this is the first time. You tied our hands to help you on that. Right. You've got to look at whatever they say. Maybe too good for my own purposes. Right. Being a good lawyer, you make a motion at the proper time and you won. But here you are. You're stuck with it. Basically, the facts are, and I know for your own instruction, that everyone has to go through it. I mean, you would contest the facts, but we don't know that yet. Yeah, you don't know that. But what you have is what you have exactly. If you look at Vermonti, I mean, it seems to me, based on the pleadings, I've got to say it's for the benefit of the employer. It seems to me that Vermonti was where police officers were not entitled to compensation for donning and duffing their clothing, but it really was because they could all do it at home. That was part of it. That was the big reason. Yes. That was the big stuff. This can't be done at home. It can only be done at the plant, as you leave. That is correct. And so, therefore, another reason why maybe motion to dismiss is not really appropriate. Well, the fact of the matter was, so what we have that is undisputed is that the principal activity has ceased. And so we still believe this is akin to walking to the parking lot, walking downstairs, taking an elevator. It doesn't matter. Yes, is it necessary to the extent that walking to the parking lot is necessary, getting in your car is necessary, but to require otherwise would basically require us to provide individual time clocks so that people could walk out and time clock. What's the big deal with that? Well, an individual time clock. Well, actually, under these pleadings, they just allege there's a blanket amount of a certain amount of time, 20 minutes or something like that. Right. So, I mean, you dispute that, but. Right. No, taking it to the light. We don't even get to Judge Ferris' point about the front and back of the line issue. They allege it was 25 minutes. I think that Judge Ferris was very prescient in saying that obviously. He's familiar with lines. Not everyone's going to be in the same line every day. So, how they get out, when they get out, also logic tells us that the facility is staffed differently during different times of the year. So, it's clear on its face, and I think it actually grants you the authority to look at it and say, hey, if you're contradictory on your facts or if your facts just don't make sense, you don't have to take those as true as a matter of law, even on a motion to dismiss. If I read the complaint, and I really read it carefully, I'm not sure they're not alleging that stopping here is not an integral and indispensable part of the activity of what they do. I mean, that's the worry that I have. I mean, I know what I ask the questions. How does it have anything to do with it? But bottom line, tell me, it seems to me they're saying the fact that I don't take stuff home is just as important as that I put it in the right rack. Well, it obviously is important because they would be terminated for taking stuff home if it wasn't discovered, obviously. So, therefore, I'm left again on a motion to dismiss with, why isn't it an integral part? Judge Smith, being necessary is not the same as being integral and indispensable. What we do know is we know that their position... But isn't it integral and dispensable not to take stuff off the employer's lot? No, I think what's integral and indispensable is doing your job, getting your sheet to go find your orders, finding your orders, picking them, and sending them on to the next department to be sent out. It's important, obviously, but I think as the Bonilla case said, really to stretch the necessary standard into an indispensable integral would be making everything, even the commute to work in the first place or the commute home, necessary or indispensable and integral to the job. So I think the integral and indispensable test is a term of art and it deals with the specific job duties, whether or not it's important to leave the building, whether or not it's important to go through security to the job, doesn't make it integral and indispensable to the job duties themselves. The job duties were those of a warehouser. It has nothing to do with going through security, going in or going out. Except that it's a job requirement. Except it's a requirement just as a requirement is to come into the workplace to begin with. I mean, that's where we come back around to the fact is no matter what job you have, it's a job requirement to go there. So whether you're going through the parking lot or going through security, it really doesn't make a lot of difference there. It's a little bit different because if you're going to work, you want to go to work too. If you're going through the security, you don't necessarily want to go through. I can see your point, but on the other hand, we can still say you may want to go to work, but you don't want to park in the parking lot because your car is out in the sun. Well, you still have to do it to go to the job. So whether you want to or not, it's still – It's not something that's going to get them to die. That's all my understanding. Would you like me to address the final question? Yes, of course. Basically, under Nevada law, there is no Nevada law. There's no portal-to-portal act under Nevada law. Basically, as we pointed out, Nevada often looks to and, in fact, in some cases, specifically refers us to the federal regulations in interpreting Nevada law. This is another reason why, frankly, the judge was correct in dismissing the class allegations because we have potentially a novel issue under Nevada law that would have to be dealt with after he's already resolved the federal claims and a reason for dismissing the class allegations to begin with. It's our argument here that under whatever standard we apply, and there is a split among the circuits, a split among the district courts about the class allegations, everyone has agreed that the district court has the discretion to manage its own case law. There's no absolute right to have a class action. That Supreme Court told us that in Hoffman-LaRouche. We also know that another standard that's used, the Third Circuit used it, was the standard dealing with supplemental jurisdiction in the first place. You have your five standards. You go through your five analysis tests. We would submit that even going through that test, there's ample reason for the court to have determined not to exercise its own discretion and dismissed the Rule 23 aspects of the case. Thank you, Counselor. Any further questions? All right. Thank you. Thank you. We have two minutes to rebuttal. Just briefly with the opt-in, opt-out issue. The Third Circuit cases that the opposing counsel is referring to, I think, have been seriously undermined by NEPRA. NEPRA is a Third Circuit appellate case that said that inherent compatibility does not exist. Now, undeniably, a district court has the discretion to manage class action procedures. But here, the district court ruled as a matter of law that FLSA collective actions and Rule 23 class actions cannot coexist. And this has happened repeatedly in the Nevada district courts. And since the plaintiffs have filed their appeal, there have been separate cases, one in Irvin in the Seventh Circuit, and then now recently NEPRA, that have disagreed with that analysis. And we respectfully request that this court address the issue as well to provide some guidance for the bar. The other issue that the opposing counsel briefly raised was that resolution in the Nevada state law claims may involve novel issues and would be a grounds for denying supplemental jurisdiction. The court here has Kauffman jurisdiction. Kauffman jurisdiction was alleged in Plaintiff's complaint. So supplemental jurisdiction is not an issue. And lastly, I want to briefly address the issue of whether or not something is necessary, is integral and indispensable. And I'm going to quote from Alvarez that to be integral and indispensable, an activity must be necessary to the principle where it's performed and done for the benefit of the employer. That's the definition of what it means to be integral and indispensable. And once a court decides that something is integral and indispensable, the Supreme Court in IBP said that in and of itself makes it a principle activity. So because, as plaintiffs argue, the actual act of undergoing security clearance is a principle activity, all the time waiting up until that point will be compensable under the continuous workday doctrine. And I'll leave you with the last quote from IBP. During a continuous workday, any walking time that occurs before the end of the employee's last principle activity is excluded from the scope of the provision, the Porter LaPorte Act, and as a result is covered by the FLSA. Thank you, counsel. Thank you. I thank both of you for coming from Nevada to argue this case today. And I want to thank the students for your kind attention during this session. And we are in recess. All rise. The court for this session stands adjourned.
judges: Farris, Thomas, Smith